IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOM ZANINI, | : | CIVIL ACTION NO. **4:CV-06-0982** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| TROY WILLIAMSON[1], | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Petitioner, Tom Zanini, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"), filed a Petition for Writ of Habeas Corpus on May 15, 2006, pursuant to 28 U.S.C. § 2241.  **(Doc. 1).**[2]  Petitioner attaches several typewritten continuation pages to his habeas petition.  (Doc. 1, pp. 8-23).  Petitioner essentially challenges the November 23, 2005 decision to rescind his parole grant effective date of April 24, 2006, and to continue  to a presumptive parole date of January 24, 2008, by the United States Parole Commission ("USPC" or "Commission") with respect to his sentence for a December 12, 1997

---

[1]Respondent Williamson  is the Warden at USP-Lewisburg.   He has custody of Petitioner.  *See* 28 U.S.C. § 2242 & § 2243.  *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

[2]Petitioner styles his Habeas Petition as being under § 2241. (Doc. 1).  The Third Circuit has held that a challenge to the validity or execution of a D.C. Superior Court sentence, even if Petitioner is incarcerated in a federal prison, is a challenge to a state sentence and must proceed under 28 U.S.C. § 2254, and not § 2241.  *See DeVaughn v. Dodrill*, Appeal No. 03-4162 (3d Cir. August 23, 2005), slip op. p. 3 (citations omitted) (Non-precedential).  However, in our case, Petitioner is challenging the United States Parole Commission's decision to revoke his parole, and not the execution of his D.C. sentence.  Thus, Petitioner may proceed under §2241.

criminal conviction in the District of Columbia ("D.C.") Superior Court for attempted second degree burglary and unauthorized use of a motor vehicle. (Doc. 1, pp. 16-17). Petitioner paid the filing fee. (Doc. 3). We give preliminary consideration to the Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)). *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979).[3]

On December 12, 1997, after a jury found him guilty, Petitioner was sentenced by the District of Columbia Superior Court to an unspecified term of imprisonment. (Doc. 1, p. 3).[4] Petitioner states that he directly appealed his judgment of conviction to the District of Columbia Court of Appeals. (*Id*.). Petitioner indicates that the Court of Appeals affirmed his conviction. (Doc. 1, p. 3). Petitioner does not indicate if he filed a Motion for Reduction of Sentence under D.C. Code § 23-110 with the District of Columbia Superior Court.

Petitioner indicates that he was granted parole regarding his D.C. sentence for his stated D.C. Code violations 22-103 and 22-3815. He states that the conditions of his D.C. parole are not "upon the record." (*Id*., p. 17). Seemingly, when Petitioner became eligible for parole, subsequent to August 5, 2000, Petitioner states that the USPC had been given authority,

---

[3]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

[4]Petitioner specifically identifies the D.C. Code offenses of which he was convicted, namely D.C. Code 22-103 and 22-3815, attempted second degree burglary and unauthorized use of a motor vehicle, respectively. (Doc. 1, pp. 16-17). Petitioner does not indicate the length of his sentence of imprisonment. (Doc. 1, p. 3).

pursuant to the Revitalization Act,[5] over his case and authority to issue parole violation warrants. (*Id.*, p. 16). Petitioner implies that he was granted parole. On November 17, 2003, a parole violation warrant was executed by the USPC for Petitioner for allegedly violating a condition of his D.C. Parole. However, Petitioner claims that he was arrested pursuant to the warrant and that his parole was revoked based on an offense that was not a D.C. Code offense. (*Id.*, p. 17). Petitioner had a parole revocation hearing on February 4, 2004 before the USPC, which he claims was contrary to the Revitalization Act, in violation of the *Ex Post Facto* Clause, and done without statutory authority. Petitioner states that the USPC revoked his parole in violation of due process and that it was ordered: "Revoke parole, continue to a presu[m]ptive (sic) re-parole on April 4, 2006 after service of 32 months." The rationale for the USPC's decision was: "Your parole violation behavior has been rated as criminal conduct of category three severity ... because it involves an assault on a police officer." (*Id.*). Petitioner claims that his due process rights were violated since no specific statute was cited regarding his charged parole violation

---

[5]We are well aware that the National Capital Revitalization & Self-Government Improvement Act of 1997 (the "Revitalization Act") gave the USPC authority to make parole decisions for D.C. Code offenders.

As this Court recently noted in *Reynolds v. Williamson*, 2005 WL 3050154 (M.D. Pa.) * 1, n. 1:

> On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code" was transferred to the Commission. National Capital Revitalization and Self-Government Improvement Act of 1997, ("Revitalization Act"), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

*See also Fletcher v. Reilly*, 433 F. 3d 867, 872 (D.C. Cir. 2006).

behavior.

Petitioner then states that on November 23, 2005, the USPC issued a Notice of Action and ordered: "Rescind presumptive date of April 24, 2006.[6]  Continue to a presumptive parole January 24, 2008.  Reason: Your current rescission behavior was (Fighting)."  (*Id*.).

Petitioner states that he made a FOIA request to the USPC for all of the information and documents, including the parole hearing transcripts, in his parole file which it used in rendering its decisions to issue the parole violation warrant and to revoke/rescind his parole.  However, Petitioner claims that the USPC refused to comply with his stated FOIA request, and that this violates due process and equal protection.  (*Id*., pp. 17-18).

## II.  Claims of Habeas Petition.

In the instant Habeas Petition, Petitioner raises seven (7) claims.  These claims are as follows:

> Claim One, abuse of discretion by USPC in depriving Petitioner his
> due process rights during his February 4, 2004 parole revocation hearing
> since no specific statutory offense was cited.  USPC only indicated that
> Petitioner's violation behavior was fleeing and attempting to elude police
> officer.  Petitioner states that this was a Pennsylvania State offense,
> not a D.C. Code offense, and not a condition of his D.C. parole.  Petitioner did
> not violate any condition of his D.C. parole.  The revocation hearing was
> conducted in a manner in which Petitioner was denied his rights since the
> charge for his parole violation was fleeing and attempting to elude
> police officer, but the hearing examiner found he committed a Pennsylvania
> State law violation of aggravated assault on a police officer without any cite
> to the Pennsylvania statute.  (Doc. 1, pp. 9-11).  Petitioner concludes
> that "it was objectively unreasonable for the [USPC] to revoke
> Petitioner Tom Zanini, parole and set a 32 months (sic) set-off for a

---

[6]Petitioner uses both the dates of April 4, 2006 and April 24, 2006 as his re-parole date. (Doc. 1, p. 17).  It appears that the correct date is April 24, 2006. (*Id.*, p. 20).

state offense, which has no specific statue." (*Id*., p. 12).[7]

Claim Two, the USPC acted beyond its authority and abused its discretion by failing to apply D.C. parole laws with respect to his parole revocation.

Claim Three, impermissible discrimination, equal protection, and due process violation by USPC since it allows federal law convicted offenders the right to appeal an adverse parole decision but not the D. C. Code offenders such as he. (*Id*., pp. 12, 14, 15).

Claim Four, abuse of discretion by USPC because it revoked Petitioner's parole based on an offense that was not a D.C. offense, and thus the USPC lacked jurisdiction to revoke Petitioner's parole. (*Id*., p. 16).

Claim Five, USPC violated the *Ex Post Facto* Clause because it failed to apply the D.C. parole guidelines and regulations in effect at the time of Petitioner's D.C. Code conviction. Petitioner claims that the USPC retroactively applied the federal parole guidelines and regulations, as amended in August 2000, to him. Petitioner states that the *Ex Post Facto* Clause was violated since his parole was revoked and he received a 53-month set-off based on an offense that was not a D.C. Code offense. (*Id*., p. 21). Petitioner also claims that the USPC engaged in double counting with respect to its November 2005 Notice of Action setting his presumptive parole date as January 24, 2008, since it improperly calculated his salient factor score, severity rating, and total point score, and by failing to give him credit (points) for program achievement. Thus, Petitioner claims that the USPC engaged in double counting based on erroneous information to determine his salient factor score and total point score. (*Id*., p. 19, 21).

Claim Six, Petitioner claims that his rights were violated because the USPC failed to comply with his November 30, 2005 FOIA request under 5 U.S.C. § 552, *et seq.*, for a copy of all information contained in his parole file the Commission used to obtain the parole violation warrant

---

[7]Petitioner received a Notice of Action from the USPC dated February 26, 2004 stating that his parole was revoked for violating Pennsylvania state law for aggravated assault on a police officer, and that a presumptive parole date of April 4, 2006 was set, *i.e.* after he served 32 months. (Doc. 1, p. 11). Subsequently, the USPC issued another Notice of Action dated November 23, 2005, in which it rescinded Petitioner's presumptive parole date of April 4, 2006, and continued it to a presumptive parole date of January 24, 2008 since it found that Petitioner was fighting. (*Id*., p. 17).

against him, his revocation hearing tape, a copy of his D.C. parole conditions of release, and a copy of all documentary evidence which the USPC used to make its decision to deny (revoke) his parole and impose a 53-month set-off with a presumptive parole date of January 24, 2008. (*Id*., p. 22).

Claim Seven, as his final claim, Petitioner states that his current detention is contrary to federal law since the USPC issued an illegal federal parole violation warrant due to the fact that it was based on an offense that was not a D.C. Code offense, *i.e.* attempting to flee or elude a police officer in violation of Pennsylvania state law.  (*Id*., p. 23).

## III.  Discussion.

We find that Petitioner should be allowed to proceed only as to his Claim Five stated above in light of *Fletcher v. Reilly*, 433 F. 3d 867 (D.C. Cir. 2006).  We find that Petitioner's other six stated claims, claims One, Two, Three, Four, Six and Seven, should be dismissed.

As this Court recently stated in *Reynolds v. Williamson*, 2005 WL 3050154 * 3 (M.D. Pa.),

> It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission.  *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Campbell v. United States Parole Commission*, 704 F.2d 106 (3d Cir. 1983).  The Commission shall also exercise authority over District of Columbia Code offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, P.L. 105-33, and D.C. Code 24-209.  *See* 28 C.F.R. § 2.70.  Therefore, the Commission has authority over Reynolds who is a D.C. offender.  The guidelines for D.C. offenders are regulated by 28 C.F.R. § 2.80.

This Court in *Reynolds* further stated:

> Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct.

6

> 2100, 60 L.Ed.2d 668 (1979). [FN4] Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. *See, e.g., McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.)
>
>> FN4.  In addition to the general holding that the Constitution does not create any liberty interest in parole, the Supreme Court in cases following *Greenholtz* developed a methodology to determine when a liberty interest may be created by a state.  *see Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).  In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, (1995), the *Sandin* majority roundly criticized the methodology developed by the *Greenholtz, Allen* and *Hewitt* Court.  *Ellis*, 84 F.3d at 1417.  Although it is unclear where the Supreme Court stands in regards to methodology, the general principle in *Greenholtz* was **not** overruled.  *Id.*
>
> The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion.  The Court is **not** empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. United States Parole Commission*, 570 F.Supp. 67-77 (M.D. Pa. 1983).

*Id*.

Thus, we find that Petitioner's Claims One, Two, Four, Six and Seven should be dismissed, since Petitioner had no liberty interest in parole under the D.C. parole statute and regulations.  *Reynolds, supra*.  Nor does Petitioner state any viable cause of action with respect

7

to his claims that the USPC abused its discretion by revoking his parole for violating Pennsylvania state law, regardless of whether the offense was fleeing and attempting to elude a police officer or assault on a police officer.

As the Court in *Moore v. Bledsoe*, 2005 WL 2709279 * 5 (W.D. Va.), stated with respect to Petitioner's equal protection claim (Claim Three):

> C.  Differential Treatment of Prisoners Guilty of Violating Federal Law and the D.C. Code Does Not Violate Any Constitutional Right.
>
> Petitioner's final contention is that he has been treated differently than a similarly-situated federal prisoner because prisoners convicted of violating federal law have a right to appeal while those found guilty of violating the D.C. Code do not. (Petition at 10-11).  Petitioner indicates that
>> [I]t is clear that both Federal inmates and D.C. Code inmates are subjected to identical Parole procedures and substantive regulations.  Both are examined by the same agency, and receive their final decision from the USPC . . . [As such, D.C. Code inmates should] be afforded Administrative Appellate rights.
>
> *Id*. at 11.  In his response, he indicates that "The Equal Protection Clause prevents governmental decision makers from treating differently persons who are in all relevant respects alike." (Pet. Resp. at 5.)
>
> Petitioner's assertion that he is similarly situated to other federal inmates is incorrect.  Petitioner is not similarly situated to federal inmates prisoners under federal law, and D.C. law, have different laws applied to them.  Petitioner is a D.C. Code inmate; the federal inmates have been convicted of violations of federal law.  They are not similarly situated for equal protection analysis.  *See Moss v. Clark*, 886 F.2d 686, 686 (4th Cir. 1989) (upholding statutory difference in good time credits for federally-housed D.C. Code prisoners for equal protection analysis).  As petitioner is not similarly situated to federal inmates, strict scrutiny is inapplicable.

The *Moore* Court, consistent with the *Reynolds* Court, *supra* * 3, also stated that:

> Finally, the law is well established that D.C. Code prisoners have no constitutionally-protected liberty interest in parole under District of Columbia law. *See Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995). Prisoners do not derive any due process rights from the parole guidelines. *See Blair-Bey v. Quick*, 151 F.3d 1036, 1047-48 (D.C. Cir. 1998); *see also Simmons v. Shearin*, 295 F.Supp.2d 599, 602 (D. Md. 2003) ("The D.C. parole statute and regulations, applicable to D.C. offenders even after they are transferred to the jurisdiction of the U.S.P.C., do not create any liberty interest in parole."); *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996). Additionally, petitioner has no due process right to the procedure afforded to federal inmates under the Commission's guidelines because he is not a federal inmate. Because petitioner has no equal protection or due process interest in an administrative appeal, his claims regarding this should be dismissed.

*Id.* *6.

Therefore, Petitioner's Claim Three should be dismissed.

With respect to Petitioner's Claim Five, his Petition should proceed for service on Respondent. Respondent should address whether the change in the parole guidelines as applied in Petitioner's case created a significant risk of increasing his punishment. As the *Fletcher* Court stated, "the critical question in *ex post facto* challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration." *Fletcher*, 433 F. 3d at 869-870; *Reynolds, supra* at *4.[8]

---

[8] We find Petitioner's *ex post facto* claim to be suspect since this Court in *Reynolds* found that the USPC's guidelines do not constitute laws for *ex post facto* purposes. *Reynolds, supra* at *5. The Court in *Moore, supra* at * 4, also found that the USPC parole guidelines were not laws for *ex post facto* purposes. However, the *Fletcher* Court rejected the position that parole/reparole regulations (and guidelines) are not laws for *ex post facto* purposes. 433 F.3d at

*1. Claim Five, Ex Post Facto Claim*

Petitioner raises an *ex post facto* claim that the Commission should have applied the D.C. parole guidelines as contained in the D.C. law, and not the federal guidelines contained in 28 C.F.R.  He claims that by applying the federal guidelines that were not in effect at the time of his D.C. sentence in December 1997, the Commission violated the *Ex Post Facto* Clause.  As discussed, Petitioner must show how he was subjected to a harsher punishment than what was in place at the time of his conviction.  Petitioner indicates that his D.C. conviction occurred prior to the enactment of new guidelines, and that the Commission should not have used these

---

869.
　　As stated, the *Fletcher* Court found that the proper inquiry in an *ex post facto* challenge to retroactively applied parole guidelines was whether the change in the parole guidelines as applied in an inmate's case created a significant risk of increasing his punishment. In *Fletcher*, Petitioner claimed that the federal reparole regulations were mainly focused on punishment and recidivism, as opposed to the D.C. Parole Board's former regulations, and that they did not factor evidence of post-incarceration rehabilitation into reparole decisions.  *Id*. at 870.  Our Petitioner, in part, claims that the USPC, during its November 2005 parole determination, did not consider evidence of his program achievements such as anger management and drug treatment courses, as well as a  welding course.  (Doc. 1, p. 21).  However, even if the USPC's guidelines are laws for *ex post facto* purposes, our Petitioner must show that the parole guidelines applied to his case created a significant risk of prolonging his incarceration. This Court in *Reynolds* specifically found that its Petitioner "failed to meet his burden of showing that the Commission's use of the guidelines at § 2.80, which provide for the granting of 'presumptive parole dates' up to three years in the future, resulted in increasing his punishment." *Reynolds, supra* at * 5.  Similar to Petitioner Reynolds' claim, our Petitioner asserts that the USPC erred in its November 23, 2005 Notice of Action in which it rescinded his presumptive parole date of April 24, 2006, and set a presumptive parole date of January 24, 2008.  This Court in *Reynolds* concluded that "the risk of increasing [ Petitioner ] Reynolds' punishment under the Commission's guidelines is 'speculative and attenuated', and no valid *ex post facto* claim exists. *Id.*
　　Thus, our Petitioner, to establish his *ex post facto* claim, must show that he suffered in fact an increased risk of punishment under the USPC's guidelines.

10

standards. Petitioner claims that the federal guidelines are more onerous than the D.C. parole guidelines, and that application of the federal guidelines in his case enhanced his presumptive parole date.

We find that Petitioner should be permitted to only proceed with his *ex post facto* claim. As noted, we find this claim suspect since the Commission's parole guidelines do not substantially circumscribe the Commission's discretion, and since Petitioner has not yet established that he has been materially disadvantaged by the use of these guidelines in his case. We are cognizant that the Commission incorporated the pertinent D.C. parole regulations into the Code of Federal Regulations (28 C.F.R. § 2.80, *et seq.*) using the same basic point scoring system. *See Reynolds, supra* at *1-*2. The Commission simply modified the point scoring system used by the D.C. Board to reflect the D.C. Board's actual practice of applying various discretionary factors to justify departures from the guidelines; that is, by using frequent factors relied upon by the D.C. Board for upward departures from the 1987 guidelines and to provide a way to more accurately predict an inmate's potential for violent recidivism. Thus, the 1987 guidelines used by the D.C. Board did not substantially circumscribe the Commission's discretion. Therefore, as this Court in *Reynolds* held with respect to an *ex post facto* claim such as our Petitioner's, the Petitioner must established that the use of the revised guidelines resulted in a harsher parole eligibility date than he would have received from the D.C. Board, *i.e.* the change in the guidelines created a significant risk of increasing Petitioner's punishment. *Id.*, p. *4.

As the *Fletcher* Court stated, "[i]n 2001, the Commission undertook a final round of rulemaking in relation to its repeople provision for D.C. Code offenders." 433 F. 3d at 872.[9] As in *Fletcher*, our Petitioner claims that the retroactive application of the federal reparole regulations adversely affected his presumptive parole date.

As discussed, this Court, as well as other Courts, have held that the USPC's guidelines do not constitute laws for *Ex Post Facto* Clause purposes. *Id.*, p. *5; *Moore v. Bledsoe*, 2005 WL 2709279 * 4 (W.D. Va.). "A law that increases the punishment over that permitted to be imposed when the crime was committed violates the *Ex Post Facto* Clause." *Smith v. U.S. Parole Comm'n*, 875 F. 2d 1361, 1366 (9th Cir. 1988). As stated, Petitioner claims that the use of the Commission's federal guidelines and not the D.C. Parole Guidelines which were in effect at the time of his sentence, violated the *Ex Post Facto* Clause. Petitioner also claims that the guidelines used by the Commission in his case in November 2005 were harsher than the guidelines under the D.C. parole laws. As the Third Circuit recently stated in *Shaffer v. Meyers*, 2006 WL 45547, Appeal No. 04-4120 (3d Cir. 1-10-06) (Non-Precedential), sip op. p. 4, "with regard to the *Ex Post Facto* Clause, we emphasize that there are two prongs to a successful claim: [Plaintiff] must show not only that there has been a change in law or policy which has been given retrospective effect but also that its retrospective application to him created a real risk of increasing the measure of his punishment." (*Citing Richardson v. PA Parole Board*, 423 F. 3d 282, 288 (3d Cir. 2005)).

---

[9]The Reparole Amendment is codified at 28 C.F.R. § 2.81 (2005). *See Fletcher*, 433 F. 3d at 872.

In *Bonilla v. Vaughn*, 1998 WL 480833, * 7 (E.D. Pa.), the Court stated that:

> [P]arole guidelines [can] constitute laws within the meaning of the ex post facto clause." *Crowell v. United States Parole Com'n,* 724 F.2d 1406, 1408 (3d Cir. 1984).  In *Crowell*, the Third Circuit stated that the test for determining if the Parole Commission's guidelines are laws, in the context of ex post facto analysis, is whether the guidelines are applied "rigidly, or with substantial flexibility . . ." *Id*.  If applied rigidly, or mechanically, guidelines can, in some instances, violate the ex post facto clause.  Similarly, in *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Supreme Court held that a cancellation of good time credits, resulting in the reincarceration of a prisoner, violated the ex post facto clause.  *See id.* at 900.  On the other hand, 'speculative and attenuated possibilities' of increasing the measure of punishment do not implicate the ex post facto clause.  *Id.* at 897 (citing *California Dept. of Corrections v. Morales*, 514 U.S. 499, 510, 115 S.Ct. 1597, 131 L.Ed. 2d 588 (1995).

(Citation omitted).

In *Muhammad v. Mendez*, 200 F. Supp. 2d 466, 469-470 (M.D. Pa. 2002), this Court stated as follows:

> It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Campbell v. United States Parole Commission,* 704 F.2d 106 (3d Cir. 1983).  The Commission assumed the responsibility for making parole release decisions for all eligible District of Columbia Code felony offenders on August 5, 1998 pursuant to the Revitalization Act and D.C. Code 24-209. [FN4] *See* 28 C.F.R. § 2.70.  Therefore, the Commission has authority over Muhammad who is a D.C. offender.  The guidelines for D.C. offenders are regulated by 28 C.F.R. § 2.80.
>
> FN 4 Effective August 5, 2000, the Commission was given the remaining responsibilities of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole for release violations. § 11231(a)(2) of the Act, codified at D.C. Code § 24-1231(a)(2).

13

> Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. *See, e.g., McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996) (D.C. Parole statute and regulations do not create any liberty interest in parole.)
>
> The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. *See* D.C. Code § 24-1231(a). The Commission's amended version of the parole rules and guidelines of the D.C. Board of Parole was published at 63 Federal Register 39172 (July 21, 1998) and is codified at 28 C.F.R. § 2.80 *et seq.*[10]

Additionally, the Court in *Allston v. Gaines*, 158 F. Supp. 2d 76 (D.D.C. 2001), held that the test to be applied in considering whether the Commission's guidelines are laws for *ex post facto* purposes is the Third Circuit's approach annunciated in *Forman v. McCall*, 776 F. 2d 1156, 1158 (3d Cir. 1985), *cert denied*, 476 U.S. 1119 (1986) ("if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes").

We find that only the Petitioner's *ex post facto* claim should proceed in order to apply the above stated analysis in the present case.

---

[10]In our case, as in *Muhammad*, as both parties recognize, the Commission has authority over Petitioner, who is a D.C. offender. *See Reynolds, supra.*

14

In *Allston*, the Court noted that "[u]nder the Third Circuit's approach, a court would need to evaluate whether the Parole Commission has discretion under the guidelines and how much discretion it has, including undertaking a statistical evaluation of the percentage of cases in which the Commission issues set-offs outside the range of months specified in the guidelines." 158 F. Supp. 2d at 82. In *Blair-Bey v. Quick*, 159 F. 3d 591, 592 (D.C. Cir. 1998), the court stated for a Petitioner to succeed on an *ex post facto* claim, he must show "at a minimum that the D.C. BOP's [here, the Commission's] discretion under the guidelines is totally or very substantially circumscribed in law or in fact and yields results materially harsher than those ordinarily occurring under the prior regime." The Court also stated that this was a "heavy" burden for a Petitioner to meet. *Id.*

This Court has already held that while the Revitalization Act obligates the Commission to follow the existing rules of D.C. Parole Board, the Commission has the authority to "amend and supplement" the D.C. parole rules. *Muhammad*, 200 F. Supp. 2d at 470. The Commission has codified its amended version of the parole rules and guidelines of the D.C. Parole Board and uses essentially the same point scoring system that the D.C. Board used. *See* 28 C.F.R. § 2.80 and *Ellis v. District of Columbia*, 84 F. 3d 1413, 1415-1416 (D.C. 1996). This Court has previously found that the modifications which the Commission has made to the point scoring system used by the D.C. Board incorporate factors upon which the D.C. Board relied to upwardly depart from its 1987 guidelines. *Id.* at 1416. The Commission's point scoring system increased the number of points for violent levels in convicted offenses and the number of previous violent episodes, which modifications it found to be a more accurate predictor of the

15

prisoner's propensity for repeating his violence. *See* 28 C.F.R. § 2.80 and 63 Fed. Reg. 39172. These changes which the Commission made to the point scoring system were discretionary factors that had been previously utilized by the D.C. Board to substantiate its upward departures from its guidelines. *See Ellis*, 84 F.3d at 1419; *McRae v. Hyman*, 667 A. 2d 1356, 1357 (D.C. 1995); *Duckett v. U.S. Parole Comm'n*, 795 F. Supp 133, 137 (M.D. Pa. 1992). *See also* 63 Fed. Reg. 39172.

Under D.C. parole rules, the "Board was not required to either grant or deny parole based upon the score attained." *McRae*, 667 A.2d at 1361. The scoring system under the D.C. Parole Regulations was also determined to be a guide, "not a 'rigid formula', and not a constraint on the discretion conferred upon the Board by the parole statute." *Ellis*, 84 F.3d at 1419 (*citing McRae*, 667 A.2d at 1360-1361).

In the instant case, Petitioner must show that the results under the prior regime, *i.e.* D.C. Board regulations, would be less harsh than under the Commission's guidelines. Petitioner must show that the Commission has deprived him of his parole eligibility by enhancing his projected parole eligibility date (*i.e.* presumptive parole date).

As noted above, this Court in *Reynolds* concluded:

> Reynolds also has failed to meet his burden of showing that
> the Commission's use of the guidelines at § 2.80, which provide
> for the granting of "presumptive parole dates" up to three years
> in the future, resulted in increasing his punishment. The D.C.
> guidelines contained a provision functionally identical to the
> Commission's guideline. That regulation provided that:
> "Notwithstanding any other provision of this section, the Board
> may order a parole reconsideration date it determines to be
> appropriate." 28 D.C.M.R. § 104.11. Thus, Reynolds' claim
> that the old guidelines utilized by the D.C. Board would have

>given him more lenient treatment than has been ordered by the Commission, is merely speculative. The Supreme Court has held that where the risk of increased punishment under an amended parole scheme is speculative and attenuated, a valid *ex post facto* claim does not exist. *Morales*, 514 U.S. at 509. Because the risk of increasing Reynolds' punishment under the Commission's guidelines is "speculative and attenuated," no valid *ex post facto* claim exists. Accordingly, Reynolds' petition will be denied.

Accordingly, we shall recommend that all of the Petitioner's claims in his Petition for Writ of Habeas Corpus be dismissed except for his *ex post facto* claim, Claim Five. Thus, we shall recommend that Petitioner's Habeas Petition proceed only as to Claim Five, *i.e.*, Petitioner's claim that the USPC's use of parole guidelines in its November 2005 parole decision setting a presumptive parole date of January 24, 2008, which were not in effect at the time of Petitioner's December 1997 District of Columbia Superior Court conviction and sentence, violated the *Ex Post Facto* Clause.

**IV. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed as to all claims except for Petitioner's *ex post facto* claim, Claim Five. It is further recommended that this case be remanded to the undersigned for further proceedings, including service of the habeas petition on Respondent for a response to Claim Five.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 5, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOM ZANINI, | : | CIVIL ACTION NO. **4:CV-06-0982** |
| Petitioner | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| TROY WILLIAMSON, | : | |
| Respondent | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 5, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                              **s/ Thomas M. Blewitt**
                                              **THOMAS M. BLEWITT**
                                              **United States Magistrate Judge**

**Dated: June 5, 2006**